PAUL S. ROSENLUND
DUANE MORRIS LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone: 415 957 3000
Email: psrosenlund@duanemorris.com

DAVID L. FAIRBANKS        735-0
HOWARD G. MCPHERSON   5582-0
CRONIN, FRIED, SEKIYA, KEKINA & FAIRBANKS
600 Davies Pacific Center
841 Bishop Street
Honolulu, HI 96813-3962
Telephone: 808 524 1433
Emails: dfairbanks@croninfried.com
        hmcpherson@croninfried.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| BRITTANY ESKILDSON, K.E. a minor, by and through her guardian ad litem LESLIE ESKILDSON, LESLIE ESKILDSON, individually, and KEITH ESKILDSON,<br><br>Plaintiffs,<br><br>v.<br><br>X-TREME PARASAIL, INC., GREG LONGNECKER, ALFONS SZYMANSKI, and DOES 1 through 20, inclusive,<br><br>Defendants. | Civil No. 1:17-cv-00124<br><br>**IN ADMIRALTY**<br><br>**COMPLAINT FOR DAMAGES** |

COME NOW plaintiffs BRITTANY ESKILDSON, K.E., a minor, by and

through her guardian ad litem LESLIE ESKILDSON (application pending),

LESLIE ESKILDSON, individually, and KEITH ESKILDSON ("Plaintiffs"), by and through their counsel, DUANE MORRIS LLP and CRONIN, FRIED, SEKIYA, KEKINA & FAIRBANKS, who allege as follows:

## PARTIES

1.       At all times material herein, Plaintiffs were and are residents of the State of Oregon, and members of the same immediate family household in Midland, Oregon.  Plaintiffs Leslie Eskildson and Keith Eskildson are husband and wife, and they are the legal and natural parents of plaintiffs Brittany Eskildson and K.E., who is a minor, and who brings this action through her mother and guardian ad litem, Leslie Eskildson (subject to pending application).

2.       Defendant Greg Longnecker ("Longnecker") is and at all relevant times was a resident of the State of Hawaii.

3.       Defendant Alfons Szymanski ("Szymanski") was at all relevant times a resident of the State of Hawaii; his current domicile is unknown.

4.       Defendant X-Treme Parasail, Inc. is a for-profit corporation formed under the laws of Hawaii and domiciled in the State of Hawaii, and doing business under various names, including but not limited to X-Treme Parasail, XTREMEPARASAIL.COM, Hawaii Pirate Ship Adventures, Hawaii Pirate Ship, and Honolulu Screamer.

DM3\4471486.1

5.     The sole officers, directors and shareholders of defendant X-Treme Parasail, Inc. are defendant Longnecker and his wife, who are and at all relevant times were residents of the State of Hawaii.

6.     The acts charged in this Complaint to have been committed by each of the Defendants, and they were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of or in the course and scope of agency or employment with each of the Defendant's affairs or operations.

7.     The true names and capacities, whether individual, corporate, partnership, limited liability company, association, or otherwise, of defendants DOES 1 through 20, inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.  Plaintiffs will ask leave of court to amend this complaint to show the true names and capacities of the fictitiously-named defendants when that information is ascertained.  Plaintiffs are informed and believe and thereon allege that each of the defendants designated as a DOE is legally responsible in some manner for the events and happenings herein referred to and caused injury and damages as herein alleged.

## JURISDICTION AND VENUE

8.     The events described herein took place within this Court's judicial district, in and around the navigable waters of Mamala Bay, City and County of

DM3\4471486.1

Honolulu, State of Hawaii, and the territorial waters of Hawaii immediately adjacent thereto.

9.      As appears more fully below, the Court has original subject matter jurisdiction over this case in admiralty pursuant to 28 U.S.C. § 1333(1).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

10.      The Defendants hold themselves out to the public, including tourists and locals, as providing "the BEST that Hawaii has to offer in jet skis, parasailing, jet boats, and flyboarding!"  X-Treme Parasail, Inc. is the registered owner of the Coast Guard documented vessel X-TREME, USCG Doc. No. 1153017, hull no. CNXO0024C404, and her associated engines, tackle and appurtenances.  X-Treme Parasail, Inc. and Longnecker own, manage and operate the vessel X-TREME and various other vessels, either directly or through sham entities established as part of a scheme intended to limit Longnecker's personal exposure to liability for injuries and deaths caused by his vessels, his agents, and his employees.  The vessel X-TREME is 31 feet long and fitted for parasail operations with a platform, winch, and other gear and tackle, and is powered by a 420 horsepower engine and outdrive.

11.      On information and belief, Plaintiffs state that X-Treme Parasail, Inc. and Longnecker hired defendant Szymanski on or about March 16, 2015 to serve as master of the vessel X-TREME for the purpose of taking paying passengers on

4

excursions that included parasailing. Szymanski claimed prior experience on a parasail boat in Florida; he was not given a pre-employment drug test. Longnecker spent March 16-18, 2015 aboard the X-TREME with Szymanski for the purpose of "on the job (underway) area familiarization." Szymanski demonstrated to Longnecker during this time that he lacked the requisite skills, competence, and/or experience with local conditions and/or the vessel X-TREME that would allow him to operate the vessel and fly parasailors safely, and on March 18, 2015 (his third day with Longnecker) Szymanski attempted to fly a parasail without passengers but he failed to do so competently, and as a result Szymanski dropped the parasail in the water, causing damage to the parasail. Longnecker was aware of this incident, and Longnecker additionally knew or should have learned in the exercise of reasonable diligence that Szymanski was a user of illegal drugs, which rendered him ineligible to hold a U.S. Coast Guard Merchant Mariner Credential.

12.     Longnecker and X-Treme Parasail, Inc. had actual or constructive knowledge of Szymanski's shortcomings as a parasail boat master, and it was reasonably foreseeable to them that hiring Szymanski and assigning him to skipper the X-TREME posed an elevated and unnecessary degree of risk to his passengers. Despite that knowledge, Longnecker and X-Treme Parasail, Inc. hired Szymanski and assigned him to serve as master of the X-TREME, without any supervision, training or drug screening, to take Plaintiffs and other paying passengers on

parasail excursions beginning March 19, 2015, the day after Szymanski had

demonstrated to Defendants his lack of skills and qualifications.  The March 19,

2015 flight involving the Eskildson girls, as described below, is believed to be the

first parasail flight that Szymanski attempted as master of a parasail boat in Hawaii

without qualified supervision.

## FIRST CLAIM FOR RELIEF

*(Negligence and Negligent Infliction of Emotional Distress)*

13.    Plaintiffs reassert and reallege, as if fully set forth herein, the

allegations of Paragraphs 1 through 12 above

14.    On or about March 19, 2015, Plaintiffs responded to the Defendants'

advertising and paid to participate in a parasailing excursion aboard the motor

vessel X-TREME, owned and/or operated by Defendants.

15.    As master of the parasail excursion vessel X-TREME, Szymanski was

directly responsible for safely executing vessel operations and for assuring the

safety of his passengers during the subject excursion, and as owners of the vessel

and employers of Szymanski, a brand new hire on his first day on the job with

passengers, both X-Treme Parasail, Inc. and Longnecker also were responsible for

supervising vessel operations and for assuring the safety of passengers, including

Plaintiffs.

16.     Parasailing as offered by Defendants to Plaintiffs and to the general public is not a sport; rather, it is part of an excursion on a commercial vessel for hire in which the parasailing passengers are completely under the control of the vessel, its master and crew, and the passengers have no control over their speed, elevation, course, or other aspects of their trip.

17.     During the course of the excursion aboard the X-TREME on the morning of March 19, 2015, Defendants put Brittany Eskildson and her sister K.E. into a tandem parasail harness, launched them into flight, and later attempted to land them on the vessel's stern platform to conclude their flight, but Szymanski answered a personal call on his cell phone as he was attempting to land them, and due to his negligence in operating the vessel, including but not limited to his decision to answer a personal cell phone call while in the midst of landing his parasail passengers, his distraction resulting from taking that call, his failure to maintain proper boat speed and direction, his failure to observe and respond to the sea and wind conditions, his known lack of skill, competence, and/or experience with local conditions and/or the vessel that he had demonstrated to Longnecker over the preceding three days, and other factors, he landed the girls in the water behind the stern of the boat rather than on the platform.  At that point, rather than following proper protocol to shut down the engine and execute a safe maneuver to bring the girls aboard while keeping them clear of the propeller, Szymanski kept

7

the engine running, he put the transmission in reverse, and he backed the vessel directly into the Eskildson girls while their parents watched in horror, and while the first mate and passengers screamed at Szymanski to stop.

18.    As a result of the Defendants' negligence, the rotating blades of the vessel's propeller struck Brittany's right foot and ankle multiple times, causing her to suffer serious and permanent physical injuries as well as emotional distress, pain and suffering.  Brittany's sister K.E. was strapped in the harness alongside Brittany and in the direct zone of danger from the spinning propeller when Brittany was struck; while in immediate proximity to her and in the direct zone of danger, K.E. saw her sister get hurt, she heard her sister scream in pain and fear, she observed her sister's gruesome injuries, and she had good reason to believe that she would suffer the same fate, which has caused severe emotional distress to K.E.  All of these activities also took place directly in front of the girls' parents, Leslie and Keith Eskildson, who were on the boat, and they joined the other passengers and the first mate in screaming at Szymanski to stop the boat, which caused them to suffer severe emotional distress as well.

19.    The Defendants, and each of them, were aware of their legal duty to notify the U.S. Coast Guard immediately in the event of a serious marine casualty that requires medical treatment beyond first aid, but the Defendants deliberately shirked their legal obligations for more than three hours, during which time

DM3\4471486.1

Szymanski and Longnecker engaged in multiple cell phone conversations, as later documented by Coast Guard investigators through cell phone billing records. During the return trip to the harbor, while Brittany lay on the deck in severe pain as others attempted to control her bleeding, and while Szymanski was on the phone with Longnecker, the X-TREME encountered a Coast Guard vessel that Plaintiffs thought had been summoned to assist them, but because of the joint decision by Szymanski and Longnecker not to call the Coast Guard, the nearby Coast Guard vessel was not aware of Plaintiffs' plight and did not render assistance, which caused Plaintiffs further distress, pain and suffering.  Also during the return trip to the dock, the X-TREME demonstrated that it was unseaworthy, because the engine began overheating, and in response Szymanski slowed the vessel and delayed Plaintiffs' return to the dock where Brittany could board an ambulance and obtain urgently needed medical care, all to the Plaintiffs' further distress, pain and suffering.

20.    After the Defendants finally notified the U.S. Coast Guard, Szymanski was ordered to take a post-accident drug test, which he failed because cocaine was found in his system.  As a result of that finding, Szymanski was charged with violating federal law, and pursuant to 46 U.S.C. § 7704 and 46 CFR § 5.35, Szymanski entered into a "voluntary surrender agreement" with the U.S. Coast

Guard in which he permanently relinquished his Coast Guard Merchant Mariner's Credential in lieu of further prosecution.

21.    The U.S. Coast Guard charged X-Treme Parasail, Inc. with failing to make a timely report to the Coast Guard, with various aggravating factors that impeded the Coast Guard's investigation.  X-Treme Parasail, Inc. paid a fine to settle these charges.

22.    The X-TREME's propeller sliced into Brittany's right ankle and lower leg multiple times; her injuries include severe lacerations to the skin, tendons and muscles in her right foot and ankle, and fractures to the talus, navicular, cuneiform, calcaneus and other bones in her right foot and ankle.  She has endured multiple surgeries and skin grafts, and is likely to require more in the future.  Brittany was studying nursing at the time of this incident, but continues to have difficulty walking and standing, and she will suffer from permanent disability that impairs her ability to work as a nurse or to engage in many other professions and activities in the future.

23.    As a direct, proximate and/or legal result of the negligence of Defendants, and each of them, Plaintiff Brittany Eskildson has suffered, and will continue to suffer in the future, severe and permanent physical injury; severe pain and suffering; permanent disfigurement and disability; severe emotional distress; loss of enjoyment of life; impairment of her ability to participate in her hobbies,

DM3\4471486.1

sports, and other activities; and other non-economic damages for which she is entitled to compensation.

24.     As a further direct, proximate and/or legal result of the negligence of Defendants, and each of them, Plaintiff Brittany Eskildson is likely to suffer a loss of future earning capacity and/or other limitations in her employment opportunities.

25.     As a further direct, proximate and/or legal result of the negligence of Defendants, and each of them, Plaintiffs have incurred expenses for medical care and treatment, and are expected to incur additional expenses in the future.

26.     As a further direct, proximate and/or legal result of the negligence of Defendants, and each of them, Plaintiffs K.E., Leslie Eskildson and Keith Eskildson have suffered, and will continue to suffer in the future, emotional distress and the loss and/or impairment of Brittany's society and companionship, and other non-economic damages for which they are entitled to compensation.

WHEREFORE, Plaintiffs pray for judgment against all of the Defendants, and each of them, including a finding that their negligence caused Plaintiffs' injuries and damages, and as further set forth herein.

///

///

11

## SECOND CLAIM FOR RELIEF

### (*Gross Negligence and Reckless Disregard*)

27.     Plaintiffs reassert and reallege, as if fully set forth herein, the allegations of Paragraphs 1 through 26 above.

28.     The Defendants' conduct as described above demonstrated Defendants' lack of scant care and a reckless disregard for the safety and well-being of Plaintiffs and others while they were passengers for hire who justifiably relied upon Defendants for their safety and well-being.  Defendants' lack of scant care and reckless disregard for the safety and well-being of Plaintiffs and others has caused Plaintiffs injuries and damages as set forth herein.

WHEREFORE, Plaintiffs pray for judgment against all of the Defendants, and each of them, including a finding that their gross negligence and reckless disregard for the safety and well-being of Plaintiffs and others caused Plaintiffs' injuries and damages, and as further set forth herein.

## THIRD CLAIM FOR RELIEF

### (*Punitive Damages*)

29.     Plaintiffs reassert and reallege, as if fully set forth herein, the allegations of Paragraphs 1 through 28 above.

30.     Defendants' acts and/or omissions have been so wanton, reckless, and/or grossly negligent as to warrant the imposition of punitive damages.

12

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

1.      General damages, in amounts to be proved at trial;

2.      Special damages, in amounts to be proved at trial;

3.      Punitive or exemplary damages in amounts warranted by the evidence presented at trial;

4.      Attorneys' fees and costs of suit;

5.      Interest allowed by law, including prejudgment interest; and

6.      Such other and further relief as the Court deems just and proper.


Dated: March 16, 2017              CRONIN, FRIED, SEKIYA, KEKINA & FAIRBANKS and DUANE MORRIS LLP

                                   By: /s/Paul S. Rosenlund
                                         Paul S. Rosenlund

                                   Attorneys for Plaintiffs
                                   BRITTANY ESKILDSON, K.E., a minor, by and through her guardian ad litem LESLIE ESKILDSON, LESLIE ESKILDSON, individually, and KEITH ESKILDSON

DM3\4471486.1